IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION,<br><br>    Defendant._____/ | No. C -12-04376 EDL<br><br>**ORDER DENYING PLAINTIFF'S FEDERAL RULE OF CIVIL PROCEDURE 56(D) MOTION FOR DISCOVERY** |

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, et seq., Plaintiff sought documents from Defendant relating to egg production at farms in Texas. In response to Plaintiff's FOIA request, Defendant provided documents, but redacted the following information from Establishment Inspection Reports ("EIR") of FDA inspections of individual Texas egg production farms: (1) total hen population at a farm; (2) number of hen houses at a farm; (3) number of rows, tiers and floors per hen house; and (4) number of birds per cage. Kaelin Decl. ¶ 4. Defendant withheld this information based on FOIA Exemption number 4 for "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). A commercial or financial matter is confidential for purposes of Exemption 4 is "disclosure of the information is likely to have either of the following effects: (1) impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." GC Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1112 (9th Cir. 1994). Through this lawsuit, Plaintiff seeks public disclosure of the information that has been withheld.

On January 11, 2013, pursuant to the Court's scheduling order, Defendant filed a motion for summary judgment, and on February 25, 2013, Plaintiff filed an opposition and cross-motion for

summary judgment. Also on February 25, 2013, Plaintiff filed a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d).[1] On March 12, 2013, the Court issued an Order denying Defendant's motion to change time to hear Plaintiff's Rule 56(d) motion, and suspending the remaining briefing schedule on the motion for summary judgment in favor of deciding Plaintiff's Rule 56(d) motion in advance of the summary judgment motions. On April 9, 2013, the Court held a hearing on Plaintiff's Rule 56(d) motion. At the hearing, the Court gave Defendant leave to file a sur-reply to the Rule 56(d) motion, which was filed on April 16, 2013.[2]

For the reasons stated at the hearing and in this Order, Plaintiff's Rule 56(d) motion is denied.

**Legal Standard**

In response to a summary judgment motion, a nonmoving party may obtain relief pursuant to Federal Rule of Civil Procedure 56(d) if it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). In the Ninth Circuit, a party seeking further discovery under Rule 56(d) must show that it diligently pursued such discovery prior to filing its motion. See Lizotte v. Praxair Inc., 2010 U.S.App. LEXIS 5681 (9th Cir. 2010) (citing Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986)). The party must also "make clear what information is sought and how it would preclude summary judgment." Id. (citing Garrett v. City & County of S.F., 818 F.2d 1515, 1518 (9th Cir.1987)) (internal quotations omitted). There must be "some basis for believing that the information sought

---

[1] Defendant argues that Plaintiff has already filed its opposition to Defendant's motion for summary judgment, so any argument that it needs additional discovery is not well-taken. However, Plaintiff has sought additional discovery in this case since filing the case management conference statement, and appears to have taken steps shortly after Defendant filed its motion for summary judgment to obtain that discovery. The fact that Plaintiff filed an opposition as it was required to do by court order does not preclude a Rule 56(d) request.

[2] At the hearing, Defendant's counsel argued that the government should be allowed to file a sur-reply because Plaintiff changed its argument between filing the motion for discovery and the reply. Defendant argued that in the reply, Plaintiff claimed a need for discovery of prior disclosure of production capacity to show that substantial competitive harm would be unlikely to result of the actual information at issue was disclosed, yet in the motion, Plaintiff allegedly based its need for discovery on the claim that the specific information at issue that was being withheld had been disclosed. It appears that Plaintiff did not so much change its position in the reply as clarify that the motion was not based on the prior disclosure of the specific information, but on disclosure of production capacity which Plaintiff contends permits reverse engineering of the specific information at issue.

2

actually exists." Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009). Further, a party seeking discovery must show that the facts are essential to litigating the motion for summary judgment. California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

Further, discovery is generally disfavored in FOIA cases. See, e.g., Lane v. Dep't of Interior, 523 F.3d 1128, 1134 (9th Cir. 2008) ("While ordinarily the discovery process grants each party access to evidence, in FOIA and Privacy Act cases, discovery is limited because the underlying case revolves around the propriety of revealing certain documents."). Courts generally do not permit discovery in a FOIA case where the plaintiff's allegations are based on speculation. See, e.g., Lawyers for Civil Rights of SF Bay Area v. United States Dep't of the Treasury, 534 F. Supp. 2d 1126, 1132 (N.D. Cal. 2008) ("Discovery is usually not permitted in a FOIA case if the government's affidavits were made in good faith and provide specific detail about the methods used to produce the information. . . . Discovery is not warranted "when it appears that discovery would only ... afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits.'") (internal citation omitted). However, discovery in FOIA cases may be granted under special circumstances when it is necessary to determine the merits. See, e.g., Giza v. Secretary of Health, Education and Welfare, 628 F. 2d 748, 751 (1st Cir. 1980) ("To the extent that discovery is allowed in an FOIA action, it is directed at determining whether complete disclosure has been made, e. g., whether a thorough search for documents has taken place, whether withheld items are exempt from disclosure."); see also Silverberg v. Department of Health and Human Services, 1990 U.S. Dist. LEXIS 19584, at *3 (D. D.C. June 26, 1990) (permitting discovery in FOIA exemption 4 case).

**Discussion**

Through this motion, Plaintiff seeks to take nonparty discovery of: (1) Chad Gregory, President of the United Egg Producers ("UEP"), regarding the extent that individuals from competing producers who serve on the UEP Board of Directors and UEP committees can access information about other UEP members; (2) Steve Storm, Vice-President of Operations at Cal-Maine Food, regarding the company's prior disclosures to other entities; and (3) Layn Barry, Controller of Mahard Egg Farm, regarding that company's prior disclosures to other entities. All of these

3

1 individuals submitted declarations in support of Defendant's motion for summary judgment, stating,
2 among other things, that discovery of the egg farm production capacity information would cause
3 competitive harm. See Lawyers' Committee for Civil Rights of San Francisco Bay Area v. U.S.
4 Dept. of the Treasury, 534 F.Supp.2d 1126, 1137 (N.D. Cal. 2008) (stating that agency declarations
5 submitted in support of summary judgment in a FOIA case are accorded a presumption of good
6 faith, which cannot be rebutted by purely speculative claims about the existence and discoverability
7 of other documents).

8 In support of the Rule 56(d) request, Plaintiff's counsel states that Plaintiff seeks discovery
9 to "show the full extent that individuals from competing egg producers who also work for UEP can
10 access information about other UEP members. and show the full extent that Cal-Maine Foods and
11 Mahard Egg Farm disclose the information at issue to other entities." Barry Decl. ¶ 4.  Counsel
12 states that discovery will show that individuals from competing egg producers who also work for the
13 UEP can access information at issue about other UEP members because it is likely that individuals
14 serving as board members or committee members for UEP, and are also egg producers, have access
15 to information about other UEP members.  Barry Decl. ¶ 6.  Counsel also states that discovery of
16 these facts is essential to opposing summary judgment because Exemption 4 confidentiality can be
17 waived when information is disclosed to other people.  Barry Decl. ¶ 7.  In addition, counsel states
18 that discovery will show that Cal-Maine and Mahard commonly disclose information at issue to
19 other entities, and that this contradicts declarations from Cal-Maine and Mahard.  Barry Decl. ¶ 8.
20 Counsel also states that this evidence will show that Exemption 4 does not apply because
21 competitive harm is not likely to result from disclosure.  Barry Decl. ¶ 9.

22 To show that the information actually exists as required by Rule 56(d), Plaintiff has proffered
23 evidence of disclosure of egg farm production capacity generally, but not disclosure of the specific
24 information from the reports that is being withheld in this case.  Plaintiff pointed to information
25 from public sources disclosing egg companies' total hen populations, number of hen houses at a
26 facility and other information.  See Cromwell Decl. Ex. D (website print out from WattAgNet.com
27 about Cal-Maine Foods from 2010-2012 showing number of hens); Ex. E (website print out from
28 WattAgNet.com about Mahard Egg Farms from 2010-2012 showing number of hens); Ex. F

4

1 (newspaper article about Cal-Maine in 1998 stating that Cal-Maine was expanding and that the
2 present facility had 24 houses for a "couple hundred thousand laying hens."); Ex. G (Investor
3 Presentation from Cal-Maine Foods from October 2012 showing, among other things, the monthly
4 hen population for 2006 through 2012); Ex. J (report by some kind of investigator stating that he
5 went to Waelder Farms and the number of hen houses hens there); Ex. K (consent decree from Texas
6 state court involving Mahard Egg Farm and stating how many hen houses and hens were at various
7 facilities). Plaintiff argues that this public disclosure of general information similar to the
8 information that was redacted from the FOIA requested documents shows that the information
9 Plaintiff seeks in discovery actually exists and that exemption 4 should not apply to the specific
10 information sought in this case because its disclosure would not cause competitive harm. However,
11 none of Plaintiff's exhibits show that there has been public disclosure of the number of tiers, rows or
12 floors in a hen house or the number of birds per cage, which is the information that is being withheld
13 in this case. See Opp. at n. 12.

14 Plaintiff seeks discovery from Chad Gregory, who is the President of UEP. Mr. Gregory
15 states in his declaration that the information about each farm's total hen population, number of hen
16 houses, number of floors per house, number of cage rows per house, number of cage tiers per house
17 and number of birds per cage is kept strictly confidential. Gregory Decl. ¶¶ 2-6. He states that
18 while egg producers provide UEP with information regarding each farm, that information is "never
19 disclosed . . . to anyone other than the member and/or participant to which the information pertains
20 or as authorized by a member or participant." Gregory Decl. ¶ 5. He also states that it is UEP's
21 policy and practice "not to divulge information about individual members or Certified Program
22 participants to anyone, including other members, egg producers outside of UEP, suppliers,
23 customers, or the public." Id. ¶ 5. He states that UEP does not disclose information about individual
24 members or Certified Program participants to any of its board members or committee members,
25 given that some of these board members or committee members are representatives or agents of egg
26 producers." Id. ¶ 5. He also states that: "UEP stores information collected from Certified Program
27 participants in hard-copy form only in its office. Such information is never distributed outside of
28 UEP's office. Further, visitors to UEP's office, including UEP board members and committee

5

1  members, are never permitted to walk around UEP's office unsupervised, much less view or obtain
2  such records." Id. ¶ 6. UEP's office is "locked when UEP employees are not present in the office."
3  Id. Plaintiff argues that it is implausible that information disclosed to UEP is not shared with board
4  members and various committee members, but Plaintiff has offered no evidence to support its
5  speculation, or to call into question the presumption of good faith accorded to the Gregory
6  declaration. See Exxon Corp. v. FTC, 663 F.2d 120, 127 (D. C. Cir. 1980) (denying request for
7  additional discovery because: "We believe there are simply no facts in the record before us that
8  justify Exxon's request to make discovery."); Lawyers' Committee for Civil Rights, 534 F.Supp.2d at
9  1137 (stating that agency declarations submitted in support of summary judgment in a FOIA case
10 are accorded a presumption of good faith).

11         Plaintiff also seeks discovery from Steve Storm, the Vice President of Cal-Maine Foods, and
12 Layn Barry, the Controller of Mahard Egg Farm. In their declarations, Storm and Barry state that
13 none of the specific information that is being withheld from Plaintiff through FOIA is in the public
14 domain. See Storm Decl. ¶ 7 ("Plaintiff relies on the Exhibits to Ms. Cromwell's declaration for its
15 assertion that the information contained in the EIRs is in the public domain. To the contrary, the
16 Exhibits do not contain the site and date specific and detailed information set forth in the EIRs that
17 has been withheld from Plaintiff. While some Exhibits contain estimated or aggregate summary
18 data related to Cal-Maine's operations as a whole, none of the Exhibits reveal the date and farm
19 specific confidential information about specific Cal-Maine houses and production facilities as set
20 forth in the EIRs. The compilation of information in the EIRs is entirely unique, is provided to the
21 FDA only because of its regulatory authority, and is not available to the public."); Barry Decl. ¶¶ 4-5
22 (". . . Mahard has not disclosed the redacted information, which is specific to the status of Mahard's
23 Chillicothe, Texas farm on July 26-27, 2011, to anyone other than the United Egg Producers. I am
24 unaware of any Mahard employee publicly disclosing information about Mahard's total hen
25 population across all of its egg production farms, and I would not authorize such disclosure due to
26 the competitive harm that Mahard would likely suffer as a result from such disclosure."). Again,
27 Plaintiff has presented no evidence to the contrary, and does not provide a basis to call into question
28 the presumption of good faith accorded to these declarations.

6

1	Even if Plaintiff has shown that there is some basis for believing that the information sought
2	actually exists pursuant to Rule 56(d), Plaintiff has not shown that discovery it seeks is essential to
3	litigating the motion for summary judgment. See California v. Campbell, 138 F.3d 772, 779 (9th
4	Cir. 1998) ("Nevertheless, a district court should continue a summary judgment motion upon a good
5	faith showing by affidavit that the continuance is needed to obtain facts essential to preclude
6	summary judgment."). Also, allowing discovery with regard to an individual farm's egg production
7	could improperly give Plaintiff information that it could not obtain through its FOIA request. See
8	Lawyer's Committee for Civil Rights, 534 F.Supp.2d at 1137 (denying discovery where the "court
9	finds that plaintiff's discovery requests, which essentially reiterate its initial FOIA requests, are
10	improper because they seek information beyond merely investigating the scope of Treasury's search
11	for responsive documents and instead seek under the guise of discovery, the same records which its
12	FOIA requests ostensibly seek.").

13	The information that has been withheld in this case, which includes detailed data at an
14	individual farm level, such as total hen population and number of birds per cage, could be used to
15	determine an accurate estimate of a farm's egg production capacity. Plaintiff argues that general
16	information about egg production capacity, at least at certain points in time, has been previously
17	publicly disclosed. Yet discovery of the withheld information is not warranted even if there has
18	been public disclosure of general egg production information because the information that has been
19	withheld also provides details about operations that have other competitive value. See, e.g., Gregory
20	Decl. in support of Mot. for Summ. J. at ¶¶ 18-20 ("Therefore, it is UEP policy and practice not to
21	divulge information about individual members or Certified Program participants to anyone,
22	including other members, egg producer outside of UEP, suppliers, customers or the public. . . . Since
23	its inception in 1968, UEP has never disclosed information about individual members and/or
24	participants in the Certified Program to anyone other than the member and/or participant to which
25	the information pertains."); Storm Decl. in support of Mot. for Summ. J. at ¶¶ 8-10 ("The Redacted
26	Information is commercially sensitive and kept strictly confidential by Cal-Maine. . . Cal-Maine
27	does not publicly disclose the Redacted Information. The compilation of Redacted Information in
28	the EIR is entirely unique and sensitive and must be protected."); Raysor Decl. in support of Mot.

7

for Summ. J. at ¶ 7 ("The confidentiality is of utmost importance during this process to allow for sophisticated parties to perform the proper due diligence without third parties underbidding or overbidding or otherwise meddling in the deal. The information being readily available to any third party would cause stagnation in the purchasing and selling of egg farms, or farm/agricultural property generally, and therefore cause harm to individual growers that sell to such facilities or farms. This could potentially harm the market generally as there is a reasonable possibility that there would be fewer facilities for the growers to market its products.").

**Conclusion**

Plaintiff's Rule 56(d) motion for discovery is denied. The Court lifts the suspension on the summary judgment briefing. Defendant's reply to its motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment (contained in one brief) shall be filed no later than May 28, 2013. Plaintiff's reply shall be filed no later than June 11, 2013. The hearing on the parties' motions for summary judgment is set for July 16, 2013 at 9:00 a.m.

IT IS SO ORDERED.

Dated: May 7, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

8